# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| Plaintiff, | )<br>) No. 17-cr-20023-SHM-tmp |
| v. | )<br>) |
| ANTWOINE MALONE, | )<br>) |
| Defendant. | )<br>)<br>) |

**ORDER**

Before the Court is Defendant Antwoine Malone's Motion to Suppress Evidence and Statements with Incorporated Memorandum of Law, filed on April 21, 2017. (ECF No. 26.) The Government responded on May 5, 2017. (ECF No. 28.) On July 7, 2017, United States Magistrate Judge Tu M. Pham issued a Report and Recommendation (the "Report"). (ECF No. 38.) The Report recommends that the motion to suppress be denied. (Id. at 214.)[1] Malone filed timely objections to the Report on July 28, 2017. (ECF No. 41.) The Government responded to Malone's objections on August 11, 2017. (ECF No. 42.) For the reasons stated below, Malone's objections are OVERRULED and the Report is ADOPTED.

---

[1] Unless otherwise noted, all in-cite page numbers refer to the PageID number.

## I. BACKGROUND

On July 13, 2016, at about 9:00 p.m., the Millington Police Department received a call from a woman, Danielle Arps, saying that she had been the victim of a domestic assault at a residence in Millington, Tennessee ("the Residence"). Arps drove to a nearby shopping center. Officer Nicholas McCarroll of the Millington Police Department and Officer Clint Dixon of the Fayette County Sheriff's Department were dispatched to meet Arps there. (See Suppression Hr'g Tr., McCarroll Test., ECF No. 33 at 66:5-14.) Arps told the officers that her husband, Malone, had pulled a gun on her after becoming angry and agitated during an argument at the Residence. (Id. at 67:11-19.) The officers testified that Arps was scared and frantic when they spoke to her. (Id. at 67:24-25.)

While Officers McCarroll and Dixon met with Arps at the shopping center, Officer James Kendrick of the Millington Police Department was dispatched to the Residence. (See Suppression Hr'g Tr., Kendrick Test., id. at 76:1-6.) At the hearing, Officer Kendrick and Malone gave different accounts of what happened when Officer Kendrick arrived at the Residence.

According to Officer Kendrick, when he pulled up to the Residence, Malone was standing in front of a car parked in the carport. (Id. at 76:8-11.) Officer Kendrick testified that

2

only the non-emergency lights and spotlight on his patrol car were on. (Id. at 77:5-12.) When Officer Kendrick got out of the patrol car and attempted to speak with Malone about the alleged domestic assault, Malone acted "shifty," then entered the Residence. (Id. at 76:17-21.) After seeing Malone enter the house, Officer Kendrick assumed a defensive position behind the car in the carport, but did not draw his gun. (Id. at 77:13-19.) Officer Kendrick estimated that Malone stayed inside the Residence for about twenty seconds before coming outside unarmed. (Id. at 78:16-25.) Officer Kendrick then spoke with Malone, who was responsive. (Id. at 79:1-11.) Around this time, Officer Dixon arrived on the scene. (Id. at 79:15-17.) The officers handcuffed Malone and conducted a pat-down search for weapons. (Id. at 79:21-25.) They found a small bag of marijuana in Malone's pocket. (Id. at 79:21-25, 90:13-18.) The officers then placed Malone in the back of a patrol car. (Id. at 80:1-5.) Officers Kendrick and Dixon testified that they did not draw their weapons at any point. (See id. at 85-86, 88-89, 90, 115.)

Malone testified that he was with a group of people under his carport after the altercation with his wife. (Id. at 159:16-22.) He testified he was doing laundry, taking clothes from the outside dryer back into the Residence, when Officer

3

Kendrick arrived and tried to speak with him. (Id. at 160:1-5.) Malone testified that, when he came back outside, Officer Kendrick drew his gun, pointed it at Malone, and ordered Malone to get to the ground and scoot toward Officer Kendrick. (Id. at 160:6-10.) Malone was then patted down, handcuffed, and placed in the back of the patrol car. (Id. at 160:16-25, 161:1-2.) Malone does not dispute that he had marijuana in his pocket.

Sergeant Dennis Brunson of the Millington Police Department arrived on the scene after Malone had been placed in the patrol car. (Id. at 162:7-8.) After speaking to Officers Kendrick and Dixon, Sergeant Brunson spoke with Malone, who was in the back seat of the patrol car. Malone and Sergeant Brunson disagree about their conversation. Sergeant Brunson testified that he

> went to the patrol car. Advised [Malone] of the nature of why we were all there, what was going on. Advised that we were going to need to locate this weapon and try to resolve all this matter. I advised him of his Miranda rights. And he advised that he understood, and he was willing to be cooperative.

(Id. at 129:22-25; 130:1-2.) Sergeant Brunson testified that, after being read his Miranda rights, Malone responded "yes, I know my rights." (Id. at 144:12-17.) Officer Dixon also testified that he heard Sergeant Brunson advise Malone of his Miranda rights. (Id. at 119:24-25, 120:1-6.)

4

According to Sergeant Brunson, Malone "advised that he put the gun in his house." (Id. at 130:17-18.) Sergeant Brunson testified that he "asked for consent to go retrieve that gun where the officers and I would have consent to go into the residence," and also "asked to search for weapons and narcotics." (Id. at 130:18-19.) Sergeant Brunson and Officer Kendrick testified that Malone gave verbal consent to search the Residence. (Id. at 96:23-25, 147:21-22.) Sergeant Brunson testified that "[w]e were given consent to search the house. We were given verbal consent more than once". (Id. at 147:21-22.) Officer Kendrick recalled that Malone was asked "[c]an we go get the gun, and is there anything else you want to tell us about as far as the marijuana or any other drugs," and that "[w]e asked [Malone] a very umbrella statement . . . are there any other guns or weapons involved in any of this? If so, let us know." (Id. at 97:5-7, 100:13-15.)

Sergeant Brunson testified that Malone "appeared to have all his senses and faculties" and that Malone advised the officers he was not "high" or impaired. (Id. at 152:15-16, 25; 153:1.) Officer Kendrick stated that Malone "did not appear to be on anything. He appeared to be normal." (Id. at 96:15-16.) Officer Dixon also testified that Malone "didn't appear to be high." (Id. at 121:15-16.)

5

Malone testified that he was never advised of his Miranda rights on July 13, 2016. (Id. at 164:21-22.) According to Malone, Sergeant Brunson told Malone that his wife had said that Malone had a gun during the alleged assault, and Brunson "was saying like he needed to get in the house to get that gun." (Id. at 162:23-15, 163:1-2.) Malone testified that he was scared and that his state of mind on the search was "you the police, you know. You're going to do what you want to do anyway." (Id. at 163:5-12.) Malone felt that the search was "[m]ore like a force thing . . . I mean, I'm going to do whatever the law tell me to do as far – I'm not going to tell them no." (Id. at 164:11-14.) He also testified he was "high" that evening, having used cocaine earlier and smoked marijuana just before his encounter with the police. (Id. at 165:1-8.) He further testified Sergeant Brunson told him that he appeared to be "high." (Id.)

Sergeant Brunson, Officer Kendrick, Officer Randy Akers, the K-9 handler, and Malone went into the Residence, while Officer Dixon stayed outside. They entered the Residence through the door by the carport with Malone leading the way. (Id. at 132:2-8.) Once inside, according to Sergeant Brunson, Malone "led [the officers] through the kitchen, down a hallway to the last room on your left." (Id. at 132:11-12.) Inside

6

that room, the officers located two firearms. (Id. at 83:23-25, 84:1-5.) According to Sergeant Brunson, when the the second gun was found, Malone said, "oh, that's my gun." (Id. at 84:11.) The officers also found marijuana and crack cocaine during the search of the Residence. (Id. at 102:20-22; 147:14-15.) After the search, Malone was transported to the police station. (Id. at 133:13-14.)

On January 26, 2017, a federal grand jury returned a one-count indictment charging Malone with being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). (ECF No. 2.)

On April 21, 2017, Malone filed this Motion to Suppress. (ECF No. 26.) The Court referred the Motion to Suppress to Magistrate Judge Pham. (ECF No. 27.) The Government responded on May 5, 2017. (ECF No. 28.)

After a suppression hearing, the Magistrate Judge entered his Report and Recommendation. (ECF No. 38.) The Report recommends denial of Malone's Motion to Suppress. (ECF No. 38.)

On July 21, 2017, Malone moved for an extension of time to file an objection to the Report. (ECF No. 39.) The Court

granted that motion on July 24, 2017.  (ECF No. 40.)  Malone filed his objections on July 28, 2017.  (ECF No. 41.)

On August 11, 2017, the Government filed a response in opposition to Malone's objections.  (ECF No. 42.)

**II. JURISDICTION & STANDARD OF REVIEW**

A district court has the authority to "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion."  28 U.S.C. § 636(b)(1)(B).

The district court has appellate jurisdiction over any decisions the magistrate judge issues pursuant to such a referral.  28 U.S.C. § 636(b); Fed. R. Civ. P. 72(a).  The standard of review the district court applies depends on the nature of the matter considered by the magistrate judge. "[U]pon proper objection by a party, a district court must review de novo a magistrate judge's ruling on a motion to suppress."  United States v. Quinney, 238 F. App'x 150, 152 (6th Cir. 2007) (citing 28 U.S.C. § 636(b)(1); United States v. Curtis, 237 F.3d 598, 603 (6th Cir. 2001)).

The Court need not review -- under a de novo or any other standard -- those aspects of a report and recommendation to

which no objection is made. Thomas v. Arn, 474 U.S. 140, 150–52 (1985). Objections to any part of a Magistrate Judge's disposition "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995); see also Arn, 474 U.S. at 147 (stating that the purpose of the rule is to "focus attention on those issues . . . that are at the heart of the parties' dispute."). A general, frivolous, or conclusory objection will be treated as if no objection had been made. Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 509 (6th Cir. 1991); see also Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986) ("[T]he district court need not provide de novo review where the objections are '[f]rivolous, conclusive or general.'" (internal quotations omitted)).

**III. ANALYSIS**

Malone objects to four of the Magistrate Judge's findings of fact. First, Malone objects to the finding that "Officers Kendrick and [Dixon] did not draw their weapons upon arrival." (ECF No. 41 at 218.)[2] Second, Malone objects to the finding that "Officer Brunson advised Malone of his Miranda rights upon first encountering Malone." (Id.) Third, Malone objects to the finding that he "consented to the search of his home."

---

[2] Malone's objection states "Officers Kendrick and Malone. . . ." (ECF No. 41 at 218.) There is no Officer Malone in the record. The Court construes the objection to refer to Officers Kendrick and Dixon.

9

(Id.) Fourth, Malone objects to the finding that "he was not intoxicated." (Id.) The Court adopts all factual findings in the Report to which Malone does not object. Arn, 474 U.S. at 150-52.

Malone does not object to the Magistrate Judge's conclusions of law. Malone "concedes that if the above factual findings are upheld by this Court, then the Magistrate [Judge's] legal conclusions would be correct." (Id. at 219.)

### A. Officers Kendrick and Dixon's Drawing of their Weapons

Malone objects to the Magistrate Judge's finding that "Officers Kendrick and [Dixon] did not draw their weapons upon arrival." (ECF No. 41 at 218.)

The Report found "Officers Kendrick and Dixon did not draw their weapons during their encounter with Malone on July 13." (ECF No. 38 at 205.) The Report concluded that "Malone's testimony [is] not credible to the extent it conflicts with the officers' testimony." (Id. at 204.) Malone does not contest the Magistrate Judge's credibility finding. Officers Kendrick and Dixon testified that they did not brandish their weapons during their encounter with Malone on July 13. Malone's account that they did is not credible. Malone presented no other evidence that the officers drew their weapons. The Court

finds Officers Kendrick and Dixon did not draw their weapons during their encounter with Malone on July 13. The objection to the Magistrate Judge's finding that Officers Kendrick and Dixon did not draw their weapons is OVERRULED.

### B. <u>Miranda</u> Rights

Malone objects to the Magistrate Judge's finding that "[Sergeant] Brunson advised Malone of this <u>Miranda</u> rights upon first encountering Malone." (ECF No. 41 at 218.) The burden is on the government to show that an advice of <u>Miranda</u> rights was given. <u>Miranda v. Arizona</u>, 384 U.S. 436, 475 (1966). Proof must be by a preponderance of the evidence. <u>Colorado v. Connelly</u>, 479 U.S. 157, 168-69 (1986).

Malone did not remember the questions Sergeant Brunson initially asked him while Malone was detained in the patrol car, but Malone conceded that Sergeant Brunson did speak to him and ask questions. (ECF No. 33 at 162:12-15.) Sergeant Brunson testified that he

> went to the patrol car. Advised [Malone] of the nature of why we were all there, what was going on. Advised that we were going to need to locate this weapon and try to resolve all this matter. I advised him of his <u>Miranda</u> rights. And he advised that he understood, and he was willing to be cooperative.

(<u>Id.</u> at 129:22-25, 130:1-2.)

11

Sergeant Brunson testified on cross-examination that, after being read his Miranda rights, Malone responded "yes, I know my rights." (Id. at 144:12-15.) Officer Dixon also testified that he heard Sergeant Brunson advise Malone of his Miranda rights. (Id. at 119:24-25, 120:1-6.) Malone testified that he was only read his Miranda rights the day after the search of his home. (Id. at 164:21-23.)

A factual determination about whether Malone was read his Miranda rights by Sergeant Brunson while in the patrol car hinges on which witnesses were more credible. The Magistrate Judge found that the police officers were credible and that "Malone's testimony [was] not credible to the extent it conflicts with the officers' testimony." (ECF No. 38 at 204.) Malone does not contest the Magistrate Judge's credibility finding.

Sergeant Brunson unequivocally testified that he had provided Miranda warnings to Malone when he first approached Malone. Malone's hazy memory of that encounter does not credibly contradict Sergeant Brunson's testimony. Because the officer's testimony is credible, the Court finds that Sergeant Brunson advised Malone of his Miranda rights on July 13. The Government has met its burden of proving Malone's Miranda

rights were administered when Officer Brunson first encountered Malone.

**C.   Consent to Search**

Malone does not challenge the Magistrate Judge's legal conclusion that Malone's consent was valid.  Malone objects to the Magistrate Judge's factual finding that Malone "consented to the search of the home."  (ECF No. 41 at 218.)  The record supports that finding.  The officers testified that they asked Malone for consent, and that Malone gave verbal consent to search the home. (ECF No. 33 at 96:23-25, 147:21-22.)   Malone testified that, when the police stated they wanted enter into the Residence, he "probably just said okay, because, you know, he was like, we going to have to get that gun."  (Id. at 163:21-23.)  The record supports the Report's finding that Malone verbally consented to the search.³

**D.   Intoxication**

Malone objects to the Magistrate Judge's finding that Malone "was not intoxicated."  (ECF No. 41 at 218.)  The Magistrate Judge did not find that Malone was not actually intoxicated.  The Magistrate Judge found that "Malone was not <u>visibly</u> intoxicated or impaired at the time he gave consent and waived his <u>Miranda</u> rights."  (ECF No. 38 at 205 (emphasis

---

³ Because Malone does not challenge the Report's conclusion that the consent was legally valid, the Court does not address that issue.

13

added).) Malone testified that he was high on both cocaine and marijuana when the police arrived at the Residence. (ECF No. 33 at 177:10-12.) Malone admitted that he was not high enough to impair his decision-making ability. (Id. at 177:13-15, 177:24-25, 178:1-2.) Malone was able to continue doing household chores and converse with family and friends. (Id.) The officers testified that Malone did not appear intoxicated. (Id. at 152:15-16, 25; 153:1; 96:15-16; 121:15-16.) The record supports the Report's finding that "Malone was not visibly intoxicated or impaired. . . ." (ECF No. 38 at 205.) The Magistrate Judge correctly found that Malone was not visibly intoxicated or impaired when he gave consent and waived his Miranda rights.

**IV. CONCLUSION**

For the foregoing reasons, Malone's objections are OVERRULED and the Report is ADOPTED.

So ordered this 19th day of September, 2017.

*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT COURT JUDGE